### DOLPH LOGAN v. THE STATE.

No. 1953. Decided November 2, 1898.

**1. Change of Venue—Contest as to—Practice—Presumptions.**

If the contest filed against an application for change of venue be insufficient, defendant should demur to the same, and if his demurrer is overruled he should reserve his bill of exceptions to such action of the court; and if the court proposes to hear testimony, he should reserve a further bill of exceptions to any evidence not raised by the contesting affidavit. Where this has not been done, and the court heard testimony upon the whole question presented in defendant's motion for a change of venue, and overruled said motion, it will be presumed, in the absence of information as to what the evidence was, that the court was justified in overruling the motion by said evidence, and that no error was committed.

**2. Continuance—Diligence.**

Where an application for continuance alleged that the absent witness resided in the county, at the place of the homicide, at the time it was committed, but that his present whereabouts was unknown, and further showed that process issued to other counties was returned not found, but does not show why it was so issued nor when issued, Held, the diligence shown was not sufficient.

**3. Continuance—New Trial—Practice on Appeal.**

When an application for continuance which has been properly overruled for want of diligence has again been presented for consideration in the motion for new trial and again overruled, the court on appeal will consider the materiality and probable truth of the proposed absent testimony in connection with the evidence which was adduced on the trial, and if from the evidence adduced it appears that possibly defendant might have been prejudiced in his rights, and that it is reasonably probable

that if the absent testimony had been before the jury the result would have been different, or a verdict more favorable to defendant would have resulted, this court will revise and reverse as error the action of the lower court in overruling the application.

**4. Same—Procuring Absence of Witness.**

On a trial for murder where, in connection with the application for continuance, there is some suggestion that the absent witness may have been kept from the court by procurement of the friends of the deceased and a witness had been sent for to prove this fact who did not arrive until the motion to continue was overruled, Held, the matter should have been thoroughly sifted by the court.

**5. Murder in the First Degree—Evidence Insufficient.**

See opinion for facts summarized which the court hold insufficient to establish express malice, and consequently insufficient to support a judgment of conviction for murder in the first degree.

APPEAL from the District Court of Cherokee. Tried below before Hon. TOM C. DAVIS.

Appeal from a conviction for murder in the first degree; penalty assessed at death.

Appellant was indicted for the murder of Emmett Simpson, on the 6th day of August, 1897, by striking him on the head with a stick and club.

The important facts adduced in evidence at the trial are concisely but clearly summed up in the opinion below.

*Weeks & Fleager, F. M. Broad,* and *W. H. Shook,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death; hence this appeal.

He reserved a bill of exceptions to the action of the court refusing to change the venue. This bill discloses that appellant proposed to change the venue on two grounds: "First, because there existed in said county of Cherokee so great a prejudice against appellant that he could not get a fair and impartial trial in said county; second, that there existed in said county a dangerous combination among influential persons, by reason of which he could not expect to get a fair and impartial trial." This was sworn to by appellant and two compurgators. The State filed a contest to this application, which, as stated by the bill, "was signed by three citizens of Cherokee County." The bill, however, states that said "affidavit did not sufficiently attack defendant's application, as required by law, and that it set out that defendant's attorneys were practicing lawyers, one living at Jacksonville, and the other at Rusk, and that they had no means of knowing the sentiment of the people of Cherokee County, but did not deny the last proposition in defendant's application, but that the court deemed the counter affidavit sufficient, and overruled the defendant's motion for a change of venue." The court explains this by stating: "There was a trial on the application to change the venue, and witnesses introduced failed to show the existence of the matter contained

in the application, and in the examination of the venire only five or six were challenged for cause." The bill as drawn is exceedingly vague and indefinite. No statement of the facts is embodied therein. If the contest to the application was insufficient (which appears to be the case), then appellant should have demurred to same; and, if his demurrer was overruled, he should have taken a bill of exceptions to the action of the court; and, if the court then proposed to hear testimony, he should have taken a bill of exceptions to any evidence upon the issue not raised by the contesting affidavit. See Davis v. State, 19 Texas Crim. App., 201. This course was not pursued; but it seems that the court heard the testimony on the whole question as presented in the motion for a change of venue, and then overruled the motion. As stated above, we are not informed what the testimony was, but we are bound to presume that it justified the court in his action, and there was no error in overruling the motion to change the venue. See Davis v. State, supra.

It is also claimed that the court erred in overruling the appellant's motion for a continuance. The motion was based on the absence of one Will Goodman, who was alleged to have resided in Cherokee County, at Jacksonville, the place of the homicide, at the time the same was committed, but whose present whereabouts were unknown to appellant. Process was issued to Tarrant and Smith counties; but why this process was issued to said counties does not appear, nor does the application state when said process was issued and forwarded to said counties. It does show, however, that the same had been returned stating that Goodman was not found in said counties. We do not believe that the diligence here shown was sufficient.

He states that he expected to prove by said witness that, at the time of the homicide, deceased, Emmett Simpson, threatened to beat the life out of him if he did not treat, and that said threat was accompanied by the picking up of a chair by Simpson prior to the striking of any blow by the defendant. Looking at the record, this testimony appears to us to quite material. It was a crucial point in the case whether or not deceased picked up the chair, and made a demonstration with it against the defendant, prior to the blow struck by defendant which caused his death. More than this, it was proposed to prove the language used by deceased in connection with his picking up the chair; and no such language was proved by any witness whom appellant was able to procure. There is no question here but that said evidence was material to defendant on the trial, and we can not say that the same is not probably true. The court acted properly in overruling the motion for a continuance because there was a lack of diligence; but, when considering the motion for a new trial, a new rule applies, made so by statute. Code Crim. Proc., art. 597, subdiv. 6. It was the duty of the court, in passing on the motion for a new trial, made on account of said absent testimony, to consider the materiality and probable truth thereof, in connection with the evidence adduced on the trial. See Jackson v. State, 23 Texas Crim. App., 183; Covey v. State, 23 Texas Crim. App., 388. In the latter case the following is laid

down as the true rule: "It is not in every case, however, where the absent testimony is material and probably true, that this court will revise the ruling of the trial court. It is only in a case where, from the evidence adduced on the trial, we would be impressed with the conviction, not merely that the defendant might possibly have been prejudiced in his rights by such ruling, but that it was reasonably probable that, if the absent testimony had been before the jury, a verdict more favorable to the defendant would have resulted." Looking at the entire record, we believe that, if the appellant had had the benefit of the absent testimony on the trial before a fair and impartial jury, the result would have been different.

We would observe in this connection that there is some suggestion in the court's explanation that the absent witness may have been kept away from court by the procurement of deceased's friends, and that a witness was sent for to prove this fact, but he was not brought into court until after the motion for a continuance had been overruled. In our opinion, in a case of this importance, this matter should have been thoroughly sifted by the court.

Appellant saved a number of bills of exception to the impanelment of the jury and the charge of the court, which are not necessary to be considered. In addition to this, he urgently insists that this case should be reversed because the evidence does not sustain the verdict of the jury. We have carefully examined the record in this connection; and, in our opinion, if there is testimony showing express malice, it is exceedingly weak. No former grudge or ill will is shown to have existed between deceased and defendant. The homicide occurred as the result of a sudden quarrel. A number of persons were congregated on the streets in Jacksonville, at night. Both deceased and defendant appear to have been in the crowd. Some of the parties were wrestling, and all were in good humor. Appellant bantered deceased for a wrestle, and offered to bet him a dollar that he could throw him down. Deceased agreed to bet, but, not having a dollar, offered to put up his watch. Defendant declined to bet a dollar against the watch. Deceased then sent off and got a dollar, and pressed appellant to put up his money. Appellant declined to do this. Deceased then insisted that he should treat the crowd. Appellant refused, and deceased still insisted. In the meantime appellant had taken a seat. There was a large stick near by, and deceased asked him what he was going to do with that stick. Appellant said the stick was there when he came. Deceased then kicked it down. Appellant picked up the stick, and started off, the deceased still insisting that he should treat the crowd before he left. Appellant, after going a few steps, turned around with his stick raised. Deceased then picked up a watermelon, but put that down, and then grabbed a chair. The State's witnesses show that he did not advance on appellant at this juncture, but that appellant advanced on him, and struck him, though they admit that deceased had the chair raised as if about to use it. One witness for defendant states that, when defendant turned, deceased stepped backward, and grabbed a chair, and, as he picked

it up, said, "If this is your game, here's at you," and advanced on defendant a step or two, when defendant struck him with the stick, and felled him to the ground. Some one remarked to defendant, "Dolph, you have done it;" to which he replied, "Yes, by God, I have done it," and ran off. One witness for the State, Warren Shanks, testified that he saw defendant that night some time after the difficulty; that he asked him how Simpson was; and that he (witness) told him that he was pretty badly hurt, to which appellant replied "that he did not give a damn; he tried to knock the damned son of a bitch's brains out." We would remark, however, in this connection, that this testimony comes in rather questionable shape, as this witness said nothing about this on the examining trial; and it was shown that afterwards he was taken out at night by a crowd with a rope, and, after this occurrence, he recollected he met the defendant that night after the homicide, and had the above conversation with him. We would observe that this testimony of the witness Shanks, and the fact that the wound inflicted on the head of the deceased was a severe one (the evidence showing that his skull was badly crushed), constitute the only suggestions of express malice. But the wound itself would hardly indicate express malice, under the rule that this can sometimes be shown by circumstances attending a brutal or cruel killing. This was not such a killing, but one springing from a sudden quarrel, in which at the time both the parties were armed with bludgeons. The chair held by the deceased was shown to be heavier than the weapon used by the defendant. We doubt if any case can be found in the books where a murder upon express malice has been sustained under such slight circumstances as are here shown. We are not unmindful of the regard in which courts should hold the verdicts of juries. Sometimes, however, yet rarely, we believe, jurors, in their zeal, go beyond the evidence; and, in our opinion, this is such a case. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

HURT, Presiding Judge, absent.